UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DONALD BROOKS,
      Petitioner,

vs.                             Case No.:  3:19cv1662/LAC/EMT

MARK S. INCH,
      Respondent.
_____/

## **REPORT AND RECOMMENDATION**

Petitioner Donald Brooks ("Brooks") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1).  Respondent ("the State") filed an answer and relevant portions of the state court record (ECF No. 18).  The court provided Brooks an opportunity to file a reply (*see* ECF No. 19), but he has not done so as of the date of this Report and Recommendation.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is

further the opinion of the undersigned that the pleadings and attachments before the court show that Brooks is not entitled to habeas relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 18).[1] Brooks was charged in the Circuit Court in and for Okaloosa County, Florida, Case No. 2014-CF-539, with one count of burglary of an unoccupied dwelling (Count 15) and one count of grand theft of $300 or more but less than $5,000 (Count 16) (Ex. 3).[2] Following a jury trial, Brooks was found guilty as charged (Exs. 6, 7). On June 23, 2015, the court sentenced Brooks to thirty years in prison on Count 15 and a concurrent term of five years in prison on Count 16, with pre-sentence jail credit of 60 days (Ex. 8).

Brooks, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D15-3547 (Ex. 9). The First DCA affirmed the judgment per curiam without written opinion on December 30, 2016 (*see* Ex. 12). *Brooks v. State*, 229 So. 3d 322, 2016 WL 7494924, at *1 (Fla. 1st

---

[1] Citations to the state court record refer to the exhibits submitted with the State's answer (ECF No. 18). If a cited page has more than one page number, the court refers to the "Bates stamp" page number in the middle of the bottom of the page.

[2] The offenses were originally charged in Case No. 2014-CF-1003 (*see* Ex. 1), but that case was consolidated into Case No. 2014-CF-539 (*see* Ex. 3).

DCA 2016) (Table). The mandate issued January 18, 2017 (*see* Ex. 12). Brooks sought certiorari review in the United States Supreme Court, No. 16-8533, but the Court denied review (*see* Ex. 12).

On May 11, 2017, Brooks filed a petition for writ of habeas corpus in the First DCA, Case No. 1D17-1969, alleging ineffective assistance of appellate counsel (Ex. 13). The First DCA denied the petition on the merits on June 6, 2017, and denied Brooks' motion for rehearing on July 28, 2017 (Ex. 14). *Brooks v. State*, 227 So. 3d 566 (Fla. 1st DCA 2017) (Table).

On August 10, 2017, Brooks filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. 15). On September 20, 2017, the state circuit court dismissed the motion as facially insufficient, without prejudice to Brooks' filing an amended motion within sixty days (Ex. 16). Brooks filed a timely amended motion on October 16, 2017 (Ex. 17). On January 30, 2018, the circuit court again dismissed the motion as facially insufficient, without prejudice to Brooks' filing a second amended motion within sixty days (Ex. 18). Brooks filed a second amended motion on February 26, 2018 (Ex. 19). The circuit court summarily denied the second amended Rule 3.850 motion on May 30, 2018 (Ex. 20). Brooks appealed the decision to the First DCA, Case No. 1D18-2905 (Ex. 21). The First DCA affirmed the circuit court's decision

per curiam without written opinion on March 1, 2019 (*see* Ex. 23).  *Brooks v. State*,

266 So. 3d 143 (Fla. 1st DCA 2019) (Table).  The mandate issued March 29, 2019

(*see* Ex. 23).

Brooks filed the instant federal habeas action on June 7, 2019 (ECF No. 1).

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that

was adjudicated on the merits in state court unless the state court's decision "was

contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United

States Supreme Court explained the framework for § 2254 review in *Williams v.*

*Taylor*, 529 U.S. 362 (2000).[3]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice
Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in
parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the
Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia)
in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices
Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean

the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this

presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74

(quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S.

at 102.  The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no further.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a

petitioner's claim only if it first finds that the petitioner satisfied § 2254(d).  *See*

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).  Even then, the petitioner must

show that he is in custody "in violation of the Constitution or laws and treaties of the

United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in

"actual prejudice," meaning, the error "had a substantial and injurious effect or

influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S.

619, 637 (1993) (internal quotation marks and citation omitted).

III.    BROOKS' CLAIMS[4]

> **A.    Ground Six:  "The Petitioner was denied his Fifth Amendment right not to incriminate himself when police continued interrogation after Petitioner invoked his right to remain silent."**

Brooks alleges during his interrogation by law enforcement, he stated, "You

know what, let's stop right here." (ECF No. 1 at 13).  Brooks argues this was an

unequivocal and unambiguous invocation of his right to remain silent and terminate

the interview (*id.*).  Brooks contends law enforcement violated *Miranda v. Arizona*,

384 U.S. 436, 473–74 (1966) by continuing the interrogation (*id.*).  Brooks states he

presented this claim to the First DCA on direct appeal (*id.*).

The State concedes that Brooks exhausted this claim in the state courts by

presenting it to the trial court in a motion to suppress and to the First DCA on direct

appeal (*see* ECF No. 18 at 36, 39).  The State contends Brooks has not demonstrated

that the state courts' adjudication of the claim was contrary to or an unreasonable

---

[4] For organizational reasons, the court addresses Brooks' claims in an order different than he presented them in his § 2254 petition.

application of clearly established federal law, or based upon an unreasonable factual finding in light of the state court proceedings (*id.* at 36–39).

          1.     Clearly Established Federal Law

In the context of invoking the *Miranda* right to counsel, the Supreme Court held that a suspect must do so "unambiguously." *Davis v. United States*, 512 U.S. 452, 459 (1994).  If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights.  *Id.* at 459, 461–62.

The same standard applies in the context of invoking the *Miranda* right to remain silent.  *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).  An accused who wants to invoke his or her right to remain silent must do so unambiguously.  *Id.*  An unequivocal and unambiguous invocation of the right to remain silent is one articulated "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement **to be** a request" to exercise his right to remain silent and terminate the interrogation, not that it **might be** a request to remain silent.  *Davis*, 512 U.S. at 459 (emphasis added).  It must be a simple, unambiguous statement that he wants to remain silent or that he does not want to talk with the police.  *Berghuis*, 560 U.S. at 382 (citations omitted).

2.    Federal Review of State Court Decision

In the trial court, defense counsel filed a motion to suppress some of Brooks'
statements to law enforcement during a custodial interrogation on August 31, 2012
(Ex. 4 at 431–33).  Defense counsel asserted that although Brooks initially waived
his *Miranda* rights and agreed to speak with officers, approximately 18 minutes into
the interrogation, Brooks stated, "You know what?  Let's stop right here." (*id.*).
Defense counsel argued this statement clearly and unambiguously asserted Brooks'
desire to invoke his right to remain silent; and officers were required to immediately
cease the interrogation (*id.*).  Counsel argued that any statements Brooks made after
he invoked his right to remain silent should thus be suppressed (*id.*).  Defense
counsel attached a copy of the transcript of Brooks' interrogation with Investigator
Mike Irwin and Investigator Randall Joiner (*id.* at 1084–1202).

The trial court held a hearing on the motion to suppress (Ex. 5 at 1032–38).
In support of the motion to suppress, defense counsel presented a video recording of
the interrogation and the transcript of the interrogation (*id.*).  The court heard
argument from the parties (*id.*).  Defense counsel argued that Brooks' statement,
"You know what, let's stop right there" was an unequivocal and unambiguous
invocation of his right to remain silent (*id.* at 1034–35).

The State presented the audio recording of the interrogation and Brooks' signed written waiver of his *Miranda* rights (Ex. 5 at 1033, 1035–37). The State argued that when Brooks made the statement at issue, he was responding to Investigator Irwin's suggestion that he (Brooks) was committing burglaries to support his drug habit (*id.* at 1036–36). The State argued that, considering the context in which Brooks made the statement, it was not an unequivocal, unambiguous invocation of his right to remain silent (*id.*).

The trial court took the matter under advisement, and subsequently issued a written order denying the motion to suppress, without offering its reasons for doing so (Ex. 5 at 451).

On direct appeal to the First DCA, Brooks' appellate counsel argued that the trial court erred in denying the motion to suppress, because Brooks' statement was an unambiguous invocation of his right to remain silent (Ex. 6). The First DCA affirmed the trial court's ruling in an unexplained decision.

The summary nature of the state courts' decisions (both the trial court and the appellate court) do not lessen the deference they are due under the AEDPA. *Richter*, 562 U.S. at 98 (holding that the state court decisions to which the AEDPA refers include summary dispositions, i.e., decisions without opinion). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or

factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. *Id.*

Here, based upon the transcript of Brooks' interrogation, it was not unreasonable for the First DCA to conclude that Brooks' statement, "You know what, let's stop right there," in the middle of a give-and-take discussion about the evidence against Brooks, the ways he disposed of stolen property, and his drug use and contacts with drug dealers, was not an unequivocal invocation of Brooks' right to remain silent.

It is undisputed (and evidenced by the transcript of the interrogation) that investigators informed Brooks of his right to remain silent, and Brooks stated he understood that right *and* his right to invoke it at any time (*see* Ex. 4 at 1086). Investigator Irwin began the interrogation by telling Brooks that law enforcement had evidence that Brooks and Paul Scofield were involved in burglaries in Pensacola (*id.* at 1087). Irwin told Brooks they had video of Brooks selling jewelry which was identified as stolen during several burglaries (*id.*). Brooks admitted he had pawned "stuff," and then complained that people were trying to set him up and pin crimes on him because he had a criminal record (*id.* at 1087–88). Investigator Irwin circled

back to the evidence they had that Brooks and Paul Scofield committed burglaries (*id.* at 1090).  Irwin told Brooks there was a video of him selling property that had been specifically identified by burglary victims as stolen, and the video indicated Brooks was selling it only an hour and a half after the burglary (*id.*).  Irwin also told Brooks that his thumbprint was on some of the stolen jewelry (*id.* at 1091).  Brooks again admitted he pawned "stuff," but said he had bought the items (*id.*).  Brooks urged Irwin to charge him if Irwin thought there was enough evidence against him (*id.*).  Investigator Irwin assured Brooks that he would be charged (*id.*).  Brooks asked Irwin what he wanted, and Irwin responded, "I want to see what you have to say," and that Brooks was obviously not committing the burglaries alone (*id.*).  Investigator Irwin told Brooks he followed Brooks' brother Ronald and watched as Ronald met Brooks at Cash America Pawn (*id.* at 1093).  Irwin said he then watched Brooks go inside the pawn shop, where he pawned a diamond ring that was stolen during a burglary (*id.*).  Investigator Irwin then identified two other pawn shops that received stolen jewelry from Brooks (*id.* at 1095).  Investigator Irwin asked Brooks what he was "willing to do" (*id.*).  Brooks responded, "Well, what do you want me to do?" (*id.*).  Investigator Irwin said he wanted the stolen property returned, and that the victims "would be more likely to work with you" if they had their property returned (*id.*).  Brooks asked Irwin to be more specific about the property he wanted

back, and then Brooks asked, "What am I going to get out of it, Mike [Investigator Irwin]? . . . [A]re y'all going to drop charges on me?" (*id.* at 1096–97). Investigator Irwin responded that charges would not be dropped, but that Brooks would have "a lot more leeway" if he returned the stolen property (*id.* at 1097). Brooks responded, "Yeah. If I can find it." (*id.* at 1098). Brooks said there were other people involved, but he couldn't contact anyone except his mother from the jail (*id.*). Investigator Joiner said they knew that other people were involved in the burglaries, but they also knew that Brooks knew more about the burglaries than he was saying (*id.*). Investigator Irwin repeated, "We want the stuff back, Donnie" (*id.* at 1102).

This led to a discussion of Brooks' drug use. Investigator Irwin said they knew that some of the stolen property "went to crack town" (Ex. 4 at 1102). Irwin said he wanted Brooks to admit he had a problem with crack or meth (*id.*). Brooks responded he had smoked crack in the past and smoked it "here and there . . . [e]very now and then," with the last time being two weeks ago (*id.* at 1102–03). Investigator Irwin told Brooks that the evidence was "starting to build up on you" (*id.* at 1103). Brooks said he knew that, and that his girlfriend told him to cooperate and not to "let everyone sink it on you" (*id.*). Brooks said he didn't want to take the fall, but he also didn't want to be a snitch (*id.*). The investigators told Brooks that the other people involved in the burglaries were pointing fingers at him and were going to

"give you up" (*id.* at 1104). Brooks said he knew that, and if the investigators could convince the prosecutor to agree to run the sentences on his Florida charges and his Alabama charges concurrently, he would assist them (*id.*). Brooks also said he would try to find the stolen property if he could be released on bond (*id.*).

Investigator Irwin asked Brooks if the stolen electronics were in "crack town" (Ex. 4 at 1106–07). Brooks responded that some of them were there (*id.* at 1107). Brooks identified "Big Wayne" as one of the crack dealers who received stolen electronics (*id.* at 1108). At that point (18 minutes into the interrogation, according to defense counsel), the following exchange occurred:

> THE WITNESS [Brooks]: If I hadn't had been—I was stupid. If I would had [sic] stayed out of pawn shops, you know what, Mike, it never would have come back on me. Nothing. That's all I had to do.
>
> INVESTIGATOR IRWIN: It eventually does.
>
> THE WITNESS: Yeah. You know—
>
> INVESTIGATOR IRWIN: Because, you know, eventually somebody is going to say—
>
> THE WITNESS: Well, eventually, somebody is going to say something, but prove it. Do you know what I am saying? That's their word against mine. Do you know what I am saying?
>
> INVESTIGATOR IRWIN: Yeah. But, Donnie, what you don't understand, dude, you are on dope.
>
> THE WITNESS: And you know what? Let's stop right here.

INVESTIGATOR IRWIN:  You doing [sic] this to feed a habit.

(BOTH PARTIES SPEAKING OVER EACH OTHER.)

THE WITNESS:  Do you know what, Mike?  The last time I got in trouble, you know what, I begged them people [sic] to give me treatment.  I have been to prison three times and begged for treatment.  Do you know what?  They never give it [sic] to me.  Never give it [sic] to me.  Never give it.  But a crack dealer will come in here that sells crack on the street, and they will go up there and ask for it one time, they will send him to him [sic], give it to him.

I have never ever been allowed to have any treatment.  I begged and begged and begged for treatment and never been able to get it.  Not once.

INVESTIGATOR IRWIN:  Do you know why?

THE WITNESS:  Why?

INVESTIGATOR IRWIN: Burglaries.

THE WITNESS:  What does that have to do [sic]?  But somebody can sell crack and they can get it?

INVESTIGATOR IRWIN:  Pretty much.  Yeah.

. . . .

THE WITNESS:  Why do they think—why do they think people steal for [sic]?  They don't steal just to be stealing.

INVESTIGATOR IRWIN:  I am not—I don't disagree with you.

(Ex. 4 at 1111–13).  Brooks and the investigators continued to discuss drug treatment programs, and Brooks admitted he was offered treatment but refused it (*id.* at 1113–

15).  They discussed the fact that Brooks' brother was also a drug addict, and that the family's business was failing (*id.* at 1115–17).  The investigators told Brooks he was a "pro" burglar, since he had been caught on only 1% of the burglaries he had committed, and that he had "nerves of steel" (*id.* at 1118–20).  Brooks responded that he wasn't a bad person; but he often needed money and hated to borrow it (*id.* at 1120–23).  The interview continued, with Brooks providing details about many burglaries, including the burglary which underlies the conviction at issue in this habeas case (the burglary of the McVays' home on Harper Road in Laurel Hill, Florida) (*id.* at 1179–84).

Viewed in its context, a fairminded jurist could agree with the First DCA's conclusion that Brooks' statement, "Let's stop right here"—made in the middle of a give-and-take discussion about the evidence against Brooks, the ways he disposed of stolen property, and his drug use and contacts with drug dealers—was not a request to exercise his right to remain silent and terminate the interrogation.  *See Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1194 (11th Cir. 2012) (holding that it was not unreasonable for the state court to conclude that the petitioner's two statements about not wanting to "talk about it"—which were isolated statements, made nearly 30 minutes apart, in response to questions about very specific details,

in the midst of a give-and-take discussion of the evidence against him—did not

constitute an unequivocal invocation of his right to remain silent).

Brooks has not demonstrated that the state court's adjudication of his Fifth

Amendment claim was contrary to or an unreasonable application of *Miranda*,

*Davis*, or *Berghuis*.  Therefore, he is not entitled to federal habeas relief on Ground

Six.

**B.    Ground Five:  "The Petitioner was denied his Sixth and Eighth Amendment Rights to a fair trial and to present a defense when court would not give State time to investigate alibi or grant mistrial."**

Brooks alleges on the first day of trial, defense counsel informed the court that

he had an alibi witness, Heather Cox (ECF No. 1 at 11).  Brooks alleges defense

counsel informed the court that he had not known about Ms. Cox prior to trial, and

although he knew about Cox's mother, Teena Heath, he had tried to contact her but

was unsuccessful (*id.*).  Brooks alleges the trial court excluded Ms. Cox as a witness

and refused to continue the trial to allow the defense to present her testimony (*id.* at

11–12).  Brooks states he presented this claim on direct appeal (*id.* at 12).

The State asserts an exhaustion defense.  The State contends Brooks failed to

fairly present the federal nature of his claim to the state court on direct appeal,

because he referred to the federal Constitution only in the issue statement but not in

his substantive argument, and he referred to a federal case only in a quotation from

a state court decision (ECF No. 18 at 31–33). The State additionally contends Brooks has not demonstrated that the state court's adjudication of this claim of trial court error was contrary to or an unreasonable application of clearly established federal law.

As Issue I of Brooks' initial brief on direct appeal, Brooks claimed that the trial court erred in denying his motion to continue to give the State time to investigate what Ms. Cox would say, or in failing to declare a mistrial, in violation of Brooks' Sixth and Eighth Amendment rights to a fair trial and to present a complete defense (Ex. 9 at i, 6, 9–15). Brooks argued that the trial court's ruling was too severe of a sanction under Florida's discovery rule, Rule 3.220 of the Florida Rules of Criminal Procedure, and cited state cases as well as *Taylor v. Illinois*, 484 U.S. 400 (1988) in support of his argument (*id.*).

The undersigned concludes that Brooks' references to his rights to a fair trial and to present a complete defense under the Sixth and Eighth Amendments, and his citation to *Taylor v. Illinois*, which is controlling federal authority on the constitutional issue, were sufficient to alert the state court to the federal nature of his claim. Therefore, Brooks satisfied the exhaustion requirement. The remaining question is whether Brooks has demonstrated that the state court's adjudication of

his federal claim was contrary to or an unreasonable application of clearly established federal law.

### 1.    Clearly Established Federal Law

The right of the accused to assert a complete defense is well established and rooted in the Fifth, Sixth, and Fourteenth Amendments to the Constitution.  The Supreme Court has explained:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks and citations omitted).  "Few rights are more fundamental than that of an accused to present witnesses in his own defense."  *Chambers v. Mississippi* 410 U.S. 284, 302 (1973).

While the Constitution unquestionably provides a defendant with the right to be heard, this right is not unbounded.  Thus, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  Moreover, courts may constitutionally preclude defendants from offering otherwise relevant evidence if they fail to comply with procedural rules that require notice to be given.  *See Michigan v. Lucas*, 500 U.S. 145, 152–53 (1991); *Taylor*,

484 U.S. at 417.  Thus, for example, a trial court may constitutionally preclude an accused from calling an alibi witness if he has failed to disclose the witness, as required under applicable procedural rules.  *See, e.g.*, *Williams v. Florida*, 399 U.S. 78, 81–82 (1970) (finding analogous state notice-of-alibi rule constitutional).

As the Supreme Court observed in *Chambers*, the accused, just like the state, "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."  410 U.S. at 302; *see also Crane*, 476 U.S. at 690; *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Rock v. Arkansas*, 483 U.S. 44, 55–56 (1987).  The purpose of notice-of-alibi rules is to provide a liberal discovery system giving both parties the maximum amount of information to prepare their cases and reduce the possibility of surprise at trial.  *See Taylor*, 484 U.S. at 411 n.16.  Indeed, given the ease with which an alibi defense can be fabricated, the government has a legitimate interest in protecting itself against an "eleventh-hour defense."  *Id.* at 412 n.17 (internal quotation marks and citation omitted).

However, a trial court's exercise of its gatekeeping responsibilities must not supplant the jury's role of determining where the truth lies.  *See United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004) (citations omitted).  The trial judge's role as gatekeeper is designed to ensure that the jury, in carrying out its prescribed

role, bases its determinations on relevant and reliable evidence, rather than on speculation or otherwise unreliable conjecture.  *Id.*  These bedrock principles establish that, while a criminal defendant must be given every meaningful opportunity to present a complete defense, in doing so he must comply with the procedural and evidentiary rules designed to facilitate a search for the truth.  *Id.*

### 2.    Federal Review of State Court Decision

On the first day of trial, after the jury had been sworn and immediately before opening statements, defense counsel informed the trial court that earlier that morning he became aware of a potential witness for the defense who could provide an alibi for the date of the burglary (Ex. 6 at 82–83).  Defense counsel stated that neither he nor his investigator was aware of Ms. Cox until that morning, and upon counsel's becoming aware of her, he notified the State (*id.* at 82–83, 89, 95).  Counsel stated he had not notified the State of any witnesses in reciprocal discovery (*id.* at 88–89).  Defense counsel identified the witness as Heather Cox, the daughter of Brooks' girlfriend, Teena Heath (*id.* at 86, 92).[5]  Counsel stated that his investigator made efforts to contact Teena Heath by telephone, but he was unable to reach her (*id.* at

---

[5]  Ms. Heath's first name is spelled "Tina" in the trial transcript, but Brooks spells his girlfriend's name "Teena" in his § 2254 petition.  The court defers to Brooks' spelling.

89–90, 92).  Defense counsel requested that the defense be permitted to present Ms. Cox's testimony at trial (*id.* at 82).

The State objected on the ground that the State filed a demand for notice of alibi on May 14, 2014 (fourteen months prior to trial), pursuant to Rule 3.200 of the Florida Rules of Criminal Procedure (Ex. 6 at 83).  The State argued that under Rule 3.200, the defense was required to file and serve upon the State, not less than ten days prior to trial, a written notice of its intent to claim an alibi, and Brooks' disclosure of Ms. Cox on the morning of trial was untimely (*id.*).  The State argued it would be prejudiced by the court's permitting Ms. Cox to testify for two reasons.  First, the State had no opportunity to speak to Ms. Cox to inquire about the nature of her alleged alibi testimony (*id.* at 84).  Second, if the State had known that the defense intended to present an alibi witness, it would have transported Brooks' co-defendant, Paul Schofield, from state prison to testify as a rebuttal witness (*id.*).

The court inquired of defense counsel as follows:

THE COURT:  . . . Here's the question:  If from the time that you got on board with the case and became aware that the State had requested alibi witnesses, if you knew about them—if you knew about them, would you have followed the rules of providing them?

MR. MYNARD [defense counsel]:  Judge, if I believe she provided exculpatory evidence, I would have provided it to the State.

THE COURT:  And today for the first time you became aware of that potential evidence is my understanding?

MR. MYNARD:  That's correct.

THE COURT:  You didn't know about it yesterday?

MR. MYNARD:  No, sir.

THE COURT:  Or the day before?

MR. MYNARD:  No, sir.

THE COURT:  It was never provided to you?

MR. MYNARD:  No, sir.

. . . .

MR. MYNARD:  Judge, I don't mind if the Court wants to put me under oath.  I mean, I can tell—

THE COURT:  I don't need to put you under oath.  You're an officer of the court, and you'll tell me truth [sic].  Did you know about this witness until yesterday?

MR. MYNARD:  No, sir, I did not know about this witness.

(Ex. 6 at 85–86, 89).

The court then inquired of Ms. Cox.  Upon being sworn, Ms. Cox stated she lived in Crestview, Florida (Ex. 6 at 86).  She stated Brooks was her mother's boyfriend, and she (Cox) had known Brooks for eight or nine years (*id.* at 86–87).  Ms. Cox stated she knew that Brooks had been in custody on the charges for over two years (*id.* at 87).  The trial court asked Ms. Cox if she talked to her mother about

the case, and Cox responded, "Sometimes." (*id.*).  The court then asked Cox if she

had talked to her mother about "these allegations"; and Cox responded, "No." (*id.*).

The court asked Ms. Cox how she knew to talk to defense counsel the morning of

trial, and Ms. Cox responded that Brooks had told her a couple of months ago that

defense counsel would contact her and her mom to discuss the case (*id.* at 87–88).

Ms. Cox stated she never tried to contact defense counsel prior to the morning of

trial (*id.* at 88).

The trial court ruled that Ms. Cox would not be permitted to testify at trial for

the following reasons:

> The rules governing the disclosure of alibi evidence, alibi witnesses
> make very clear that that information is to be turned over in a timely
> manner by the Defense upon discovery of that information.  Clearly,
> this morning for the first time ever, Mr. Mynard, counsel for Mr.
> Brooks, was provided a story that could be consistent with an alibi.
> Whether it's believable or not is another matter altogether.  But he did
> receive information and turned it over.  It's equally clear that the rule
> provides that the Court discern whether or not the rule is followed.  [It]
> has not been.
>
> The Court also finds that this is materially, materially prejudicial
> to the State.  One cannot imagine how it can be more prejudicial at this
> late date.  The jury has been sworn.  The State does not have an
> opportunity to provide through a witness that exists rebuttal evidence,
> which would be from the State's perspective, inconsistent with the story
> that Heather Cox would purport to tell.  And therefore, she will not be
> permitted to testify.

(Ex. 6 at 90–91).

Defense counsel then moved for a continuance to permit the State to depose Ms. Cox and obtain the presence of any rebuttal witnesses (Ex. 6 at 91). Counsel argued Brooks would suffer undue prejudice and be denied a fair trial if the defense was not permitted to present the "potential exculpatory evidence" (*id.* at 91–92).

The State objected to a continuance (Ex. 6 at 94). The State argued that Brooks had been aware of the charges for over two-and-a-half years; and that over that period Brooks had spoken to both Ms. Heath and to defense counsel, yet Brooks chose not to mention Heather Cox as an alibi witness (*id.*).

Defense counsel stated that Ms. Cox came to his attention that morning from Teena Heath (Ex. 6 at 93). Counsel stated that if his investigator had been able to talk to Ms. Heath sooner (i.e., if Heath had responded to his investigator's attempts to contact her), he likely would have discovered Ms. Cox as a witness, and the substance of her testimony (*id.* at 93–95).

The trial court characterized the sudden appearance of Ms. Cox as a potential alibi witness as a "disingenuous, obvious lack of honesty" and denied the request for continuance (Ex. 6 at 93, 95).

In an unexplained decision, the First DCA rejected Brooks' argument that the trial court's rulings were erroneous (Ex. 12).

Brooks has not shown that the state court's rejection of his claim was based upon an unreasonable factual determination. As noted above, the state court credited defense counsel's statements that no one had informed him of the existence of Ms. Cox as a potential alibi witness prior to the morning of trial.

In the absence of **clear and convincing evidence**, [courts] have no power on federal habeas review to revisit the state court's credibility determinations." *Nejad v. Attorney*, 830 F.3d 1280, 1292 (11th Cir. 2016) (emphasis in original) (citation omitted); *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing *Rice v. Collins*, 546 U.S. 333, 341–42 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).

Here, Brooks has not shown by clear and convincing evidence that the state's court's credibility determination was unreasonable. Therefore, this federal habeas court must accept the state court's determination that no one (including Brooks,

Teena Heath, or Heather Cox) told defense counsel or his investigator about the existence of Ms. Cox as a potential alibi witness prior to the morning of trial.

This federal court must also defer to the state court's determination that the exclusion of Ms. Cox as an alibi witness was proper under Rule 3.200 of the Florida Rules of Criminal Procedure.  Rule 3.200 of the Florida Rules of Criminal Procedure provides, in relevant part:

> On the written demand of the prosecuting attorney, specifying as particularly as is known to the prosecuting attorney the place, date, and time of the commission of the crime charged, a defendant in a criminal case who intends to offer evidence of an alibi in defense shall, not less than 10 days before trial or such other time as the court may direct, file and serve on the prosecuting attorney a notice in writing of an intention to claim an alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or the defendant's attorney, the names and addresses of the witnesses by whom the defendant proposes to establish the alibi. . . .  If a defendant fails to file and serve a copy of the notice as herein required, the court may exclude evidence offered by the defendant for the purpose of providing an alibi, except the defendant's own testimony. . . .  For good cause shown the court may waive the requirements of this rule.

Fla. R. Crim. P. 3.200.

Here, the state court determined that Brooks' notice of alibi was untimely under Rule 3.200, and that there was no reason to waive the requirements of the Rule.  This federal habeas court must abide by the state court's interpretation of state

law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

Considering Brooks' failure to comply with Florida's alibi rule, a fairminded jurist could agree with the First DCA's conclusion that the trial court's exclusion of Ms. Cox's testimony did not violate Brooks' constitutional rights to due process and a fair trial.  Ms. Cox did not reveal herself to defense counsel as an alibi witness until the morning of trial, despite her mother being Brooks' long-time girlfriend, Cox's knowledge that Brooks had been detained on the burglary charge for more than two years, and Cox's knowledge that contact with defense counsel was necessary to facilitate her assisting Brooks in defending the charge.  Further, by the time Cox revealed herself, the jury had been sworn, and the State had marshaled its witnesses, none of whom could have rebutted any alibi testimony.  Had the State been timely notified of the alibi testimony, it could have arranged for the presence of a rebuttal witness, Brooks' co-defendant Paul Schofield.  Brooks has not demonstrated that the state courts' adjudication of his constitutional claim was contrary to or an unreasonable application of clearly established federal law.  *See, e.g.*, *United States v. Jones*, 456 F. App'x 841, 843–44 (11th Cir. 2012) (unpublished but recognized as persuasive authority) (district court did not abuse its discretion in excluding alibi witness's testimony under Fed. R. Crim. P. 12.1, nor did district court's exclusion

violate defendant's Fifth and Sixth Amendment rights; defendant asserted his (untimely) alibi notice after the trial term began, and the parties had to be ready for trial on 24 hours' notice; and allowing defendant to assert his untimely alibi notice would have prevented the government form having an ample opportunity to investigate certain facts crucial to the determination of guilt or innocence).

Moreover, a fairminded jurist could conclude that any error, constitutional or otherwise, was harmless beyond a reasonable doubt.  If the federal habeas court is faced with reviewing whether the state appellate court's application of the harmless error standard on direct appeal was objectively unreasonable, the federal court must ask whether a fairminded jurist could agree with the state court's conclusion that the constitutional error was harmless.  *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *see also, e.g.*, *Hammonds v. Comm'r, Ala. Dep't of Corr.*, 712 F. App'x 841, 850 (11th Cir. 2017).   If the court finds that a fairminded jurist could agree with the state court's conclusion, then the court must deny habeas relief because the petitioner failed to satisfy the AEDPA's precondition to relief and necessarily cannot satisfy *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See Davis v. Ayala*, 576 U.S. 257, 268 (2015).

Here, Brooks' statements to Investigator Irwin were compelling proof of his involvement as a principal in the burglary of the McVays' home.  Further, if Ms.

Cox had testified, the State certainly would have cross-examined her regarding the timing and circumstances of her revealing herself as an alibi witness, which would have born on the reliability of her testimony.  A fairminded jurist could thus conclude that any constitutional error in excluding Ms. Cox's testimony was harmless.  *See, e.g.*, *Jones*, 456 F. App'x at 844–45 (even if district court's exclusion of alibi witness violated defendant's constitutional rights, the error was harmless beyond a reasonable doubt, because there was no reasonable possibility the excluded testimony contributed to defendant's guilty verdict; the evidence at trial—including the consistent testimony of three bank employees and several other first-hand witnesses, an incriminating response by defendant concerning the robberies, and the close proximity of time between the robberies and defendant's presence in Florida— showed compelling proof of defendant's presence in Florida during the dates of the bank robberies at issue).

Brooks has not demonstrated that the state court's rejection of Ground Five was based upon an unreasonable determination of fact, or that it was contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on Ground Five.

## C.    Ground One:    "Ineffective assistance of counsel—failure to investigate, depose, and call alibi witnesses."

Brooks faults defense counsel for failing to investigate and call Teena Heath and Heather Cox as alibi witnesses (ECF No. 1 at 5).  Brooks alleges both witnesses would have testified he was with them all day at a birthday party on the day of the burglary of the McVays' home (*id.*).  Brooks contends if counsel had presented the testimony of Ms. Heath and Ms. Cox, the trial court would have granted a motion for judgment of acquittal or the jury would have found him not guilty (*id.*).  Brooks asserts he presented this claim in his Rule 3.850 motion and his appeal of the circuit court's denial of the motion (*id.* at 6).

The State contends Brooks did not exhaust this ineffective assistance of trial counsel ("IATC") claim (ECF No. 18 at 21–22).  The State contends Brooks failed to fairly present his IATC claim in the circuit court, because it was facially insufficient (*id.*).  The State further argues Brooks failed to properly present his IATC claim in the post-conviction appeal, because he did not state the reasons the circuit court's dismissal of his claims as facially insufficient was improper (*id.*).  The State contends Brooks' failure to properly present his IATC claim to the state courts renders the claim unexhausted and procedurally barred from federal review (*id.* at 22).  But the State then argues Brooks did not procedurally default the claim in the

state courts, because the state courts adjudicated the merits of the claim (*id.*). The State contends the state courts' adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 22–24).

### 1.    Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." *Picard*, 404 U.S. at 277–78.

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270–71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'") (quoting *Kelley*, 377 F.3d at 1344–

45).  Courts apply "fair presentation" principles "with common sense and in light of the purpose underlying the exhaustion requirement—namely, giving the state courts 'a meaningful opportunity' to address the federal claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

A claim that was not exhausted in state court and which no longer can be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40, 848 (1999).  A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

Upon review of Ground One of Brooks' second amended Rule 3.850 motion (*see* Ex. 19 at 5–7), the undersigned concludes that he fairly presented the state circuit court with the same federal IATC claim that he presents as Ground One of his § 2254 petition.  Further, Brooks argued this IATC claim in his initial brief in the post-conviction appeal (*see* Ex. 21).  Brooks satisfied the exhaustion requirement as to Ground One.

Further, as the State concedes, the state court's denial of relief on Brooks' IATC claim as insufficiently pled constitutes a ruling on the merits.  *See Owen v.*

*Sec'y for Dep't of Corr.*, 568 F.3d 894, 912–13 (11th Cir. 2009); *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) ("a Florida state court's dismissal of a postconviction claim for facial insufficiency constitutes—at least for purposes of the procedural default analysis—a ruling 'on the merits' that is not barred from our review") (citing *Borden v. Allen*, 646 F.3d 785, 810–13 (11th Cir. 2011)). Therefore, the court must proceed to determine whether Brooks has demonstrated that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law.

### 2.    Review Under Section 2254(d)

### a.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, the petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If the petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and

reasonableness is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected— and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." *Jones*, 436 F.3d at 1293 (citing *Chandler*, 218 F.3d at 1314–15 n.15). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no

relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the *Strickland* standard, the petitioner's burden of demonstrating prejudice is high. *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, the petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And the petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder

would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

The prejudice assessment does "not depend on the idiosyncracies [sic] of the

particular decisionmaker," as the court should presume that the judge or jury acted

according to law. *Id.* at 695.

Finally, when a district court considers a habeas petition, the state court's

findings of historical facts in the course of evaluating an ineffectiveness claim are

subject to the presumption of correctness, while the performance and prejudice

components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier*

*v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland's* high

bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

"Establishing that a state court's application of *Strickland* was unreasonable under

§ 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court

explained:

> The standards created by *Strickland* and § 2254(d) are both
> "highly deferential," and when the two apply in tandem, review is
> "doubly" so. The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial. Federal habeas courts must
> guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d). When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable. The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### b.    Federal Review of State Court Decision

As previously discussed, Brooks presented Ground One as Ground 1 of his second amended Rule 3.850 motion (Ex. 19 at 5–7).  In the state circuit court's written decision denying the claim, the court cited *Strickland* as the applicable legal standard (Ex. 20).  The court adjudicated the claim as follows:

> In Grounds 1 through 5 of the motion, Defendant claims that trial counsel was ineffective.  The Court finds that the claims are facially insufficient in that Defendant fails to allege proper prejudice.  *See Jones v. State*, 998 So. 2d 573, 584 (Fla. 2008) ("A mere conclusory allegation that the outcome would have been different is insufficient to state a claim of prejudice under *Strickland*; the defendant must demonstrate how, if counsel had acted otherwise, a reasonable probability exists that the outcome would have been different—that is, a probability sufficient to undermine confidence in the outcome.").  Because Defendant has been given two opportunities to amend and the claims are still facially insufficient, the Court concludes that the claims should be dismissed with prejudice.  *See* Fla. R. Crim. P. 3.850(f)(2); *Nelson v. State*, 977 So. 2d 710, 711–12 (Fla. 1st DCA 2008); *Oquendo v. State*, 2 So. 3d 1001, 1006 (Fla. 4th DCA 2008).

(Ex. 20).

Brooks appealed the circuit court's decision to the First DCA and argued this issue in his initial brief (*see* Ex. 21).  The First DCA affirmed the circuit court's decision without explanation (Ex. 23).  As discussed *supra*, the state court's denial of relief constitutes a ruling on the merits.  *See Owen.*, 568 F.3d at 912–13; *Pope*, 680 F.3d at 1286.

The state court reasonably rejected Brooks' IATC claim on *Strickland*'s prejudice prong.  At Brooks' trial, the jury watched and heard the video/audio recording of his interview with investigators (discussed *supra* in Ground Six) (*see* Ex. 6 at 161–67).  During the interview, Brooks indicated he had a hand in the burglary of the McVays' home by stating that when he learned that the victim was a preacher, he "started to go back and just, you know, put the shit back in the house and set it on the porch and be done with it" (*id.* at 166).  Considering Brooks' statements to investigators, there was no reasonable probability the jury would have returned a different verdict if Brooks' girlfriend and her daughter had testified that Brooks was at a birthday party with them on the day of the burglary.

Brooks has not demonstrated that the state courts' rejection of Ground One was contrary to or an unreasonable application of *Strickland*.  Therefore, he is not entitled to federal habeas relief on Ground One.

### D.    Ground Two:  "Ineffective assistance of counsel—failed to present exculpatory evidence and present a defense to charges."

Brooks asserts the State provided defense counsel with a letter from Paul Schofield, Brooks' co-defendant, to his (Schofield's) sister (ECF No. 1 at 7).  Brooks alleges defense counsel never told him about the letter (*id.*).  Brooks alleges Schofield intimates that he (Schofield) committed burglaries, and Schofield

expressly states he will "do what he needs to do" to reduce his sentence exposure (*id.*). Brooks alleges Schofield's letter supports his (Brooks') alibi defense and explains Brooks' possession of recently stolen property (*id.*). Brooks alleges if defense counsel had called Schofield as a witness and confronted him with the letter, it would have undermined the State's theory of prosecution and offered an explanation as to why Brooks was in possession of recently stolen property (*id.*). Brooks asserts the jury would have returned a different verdict if defense counsel had called Schofield as a witness (*id.*). Brooks asserts he presented this issue in his Rule 3.850 motion and in his post-conviction appeal (ECF No. 1 at 8).

The State contends Ground Two is unexhausted and procedurally barred, because Brooks did not properly present it to the state courts (ECF No. 18 at 24). The State also contends Ground Two is without merit (*id.* at 24–28).

Upon review of Brooks' second amended Rule 3.850 motion, it is evident that the only claim remotely similar to the instant Ground Two is Ground 2, which asserts an IATC claim related to Paul Schofield's letter (*see* Ex. 19 at 8–10). However, the nature of the two claims is substantially different.

Ground Two of Brooks' § 2254 petition faults defense counsel for failing to **call Paul Schofield as a defense witness** and confront him about the contents of the letter to his sister. Brooks alleges if defense counsel had **presented Schofield's**

**testimony to the jury**, the jury would have returned a different verdict.  However, Ground 2 of Brooks' second amended Rule 3.850 motion faults defense counsel for **failing to tell Brooks about Schofield's letter**, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)  (*see* Ex. 19 at 8–10 & n.5).   In the Rule 3.850 motion, Brooks alleged that if defense counsel had **disclosed the letter to him**, the result of the trial proceedings would have been different (*id.* at 10).

Additionally, Brooks failed to fairly and properly present his IATC claim to the First DCA in his post-conviction appeal.  In Florida, an appellant who files a brief when appealing a summarily denied post-conviction motion must raise and fully address in his brief all arguments on which he seeks appellate review.  The appellate court will not review claims that are not briefed.  *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008) (holding that an appellate court "may review only those arguments raised and fully addressed in the brief"); *see also Roderick v. State*, 284 So. 3d 1152, 1154 (Fla. 1st DCA 2019) (holding that three of defendant's seven post-conviction claims were not subject to appellate review because the defendant did not argue them in his brief) (citing *Watson*, 975 So. 2d at 573).[6]

---

[6]  If an appellant does not file a brief when appealing a summarily denied post-conviction motion (which is not the case here), the appellate court is required to investigate all possible means of relief.  *Watson*, 975 So. 2d at 573 n.1; *see also* Fla. R. App. P. 9.141(b)(2).

In Brooks' initial brief to the First DCA, he argued only Ground 1 (i.e., counsel's failure to investigate and depose Teena Heath and Heather Cox) (Ex. 21 at 4–8). Brooks did not present argument on Ground 2 (counsel's failure to tell him about Paul Schofield's letter). Brooks' failure to present Ground Two to the state courts renders the claim procedurally defaulted for federal habeas purposes.

Notwithstanding Brooks' failure to exhaust Ground Two, he is not entitled to federal habeas relief, because the claim is without merit. Brooks filed a copy of Paul Schofield's letter to his sister as an exhibit to his second amended Rule 3.850 motion (Ex. 19 at 29–33). In the letter, Schofield calls Brooks a liar and a "snitch" (*id.* at 29). Schofield states Brooks and his brother Ronnie "told on" Schofield and a man named Brian (*id.*). Schofield states Brooks "recorded a conversation talking to me about stuff, you know what I mean" (*id.*). Schofield stated he initially did not intend

---

In the past, the Eleventh Circuit interpreted Florida law differently. In two unpublished decisions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to all claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief. *See Darity v. Sec'y, Dep't of Corr.*, 244 F. App'x. 982, 984 (11th Cir. 2007); *Cortes v. Gladish*, 216 F. App'x 897, 899–900 (11th Cir. 2007). However, the Florida case upon which the Eleventh Circuit relied in *Darity* and *Cortes*, that is, *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009); *see also Maxwell v. State*, 169 So. 3d 1264, 1265 n.1 (Fla. 5th DCA 2015) (holding, in a postconviction appeal where the lower court summarily denied relief without evidentiary hearing, that the defendant abandoned two of his three grounds by failing to raise them in his appellate brief) (citing *Ward*, 19 So. 3d at 1061).

to talk to law enforcement, but "after they told me everything and showed me stuff, I had no choice." (*id.*).  Schofield stated:

> They got me on some stuff in Okaloosa County but there [sic] not going to put the charges on me yet.  They want me to bond out in Santa Rosa County because since [sic] Donnie told them that me, him, & Brian did all that stuff down there and Ronnie told them it was me & Donnie that did it all.  They were suppose [sic] to work with Mike [Investigator Irwin] about getting the stuff back.  They won't answer his calls and are trying to blame it on me & Brian. . . .  Anyway, said they would help me with the charges if I would testify against them.  I got no choice sis.

(*id.* at 29–30).  Schofield begged his sister to bond him out (*id.* at 30–33).  He stated he would probably receive a prison sentence (*id.* at 30–31).  Schofield apologized for treating his sister badly (*id.* at 30–31, 33), and asked her to hide his phone and his car from law enforcement (*id.* at 32).

Brooks characterizes Schofield's letter as exonerating him and supporting his alibi defense, but the letter does neither.  Brooks states his alibi defense was that he was at a birthday party with Teena Heath and Heather Cox on the day the McVay's home was burglarized.  Schofield's letter offers nothing to support this alibi.

Additionally, Schofield's letter does not exonerate Brooks.  The letter clearly implicates Schofield in the criminal activities; but the jury heard, through the testimony of Investigator Irwin, that Schofield had already been convicted of the burglary of the McVay's house and was serving a prison term (Ex. 6 at 168–69).

Further, Schofield's letter identifies Brooks as a participant; and the jury in Brooks' trial was instructed on a principal theory of liability (*see id.* at 214–29).  So the letter had little, if any, exculpatory value.  For these reasons, defense counsel's failure to call Schofield as a witness was not deficient.

Moreover, there is no reasonable probability the jury would have returned a different verdict if defense counsel had called Paul Schofield as a witness.  The jury heard and saw Brooks implicate himself in the McVay burglary during his interview with Investigator Irwin.  Schofield's statements in his letter would have only strengthened the inference that Brooks was a principal in the burglary.

Brooks has not shown that defense counsel was ineffective for failing to call Paul Schofield as a witness at trial.[7]  Therefore, Brooks is not entitled to federal habeas relief on Ground Two.

**E.    Ground Three:  "Ineffective assistance of counsel for misadvice to testify [sic] and failure to give real notice of true nature of charges and required proof."**

**Ground Four:   "Petitioner was denied effective assistance of counsel during plea negotiations."**

---

[7] Paul Schofield did not testify at Brooks' trial, so there is no basis for an IATC claim based upon defense counsel's failure to cross-examine Schofield with the statements in the letter (as opposed to calling him as a witness).

Grounds Three and Four are based upon the same alleged error by defense counsel, i.e., counsel's failure to advise Brooks of "a legal presumption that he committed the burglary because he had possession of recently stolen property" (ECF No. 1 at 9–10). Brooks asserts he proceeded to trial believing that the State was required to prove beyond a reasonable doubt that he committed the burglary (*id.*).

Grounds Three and Four assert different, inconsistent, prejudicial effects of defense counsel's alleged error. In Ground Three, Brooks alleges had known that the State was relieved of its burden to prove beyond a reasonable doubt that he committed the burglary, he would have testified he was at a birthday party when the burglary occurred, and that he purchased the items he possessed from Paul Schofield (ECF No. 1 at 9). In Ground Four, Brooks alleges had he known that the State was relieved of its burden of proof, he would have accepted the State's plea offer of 24.3 years, instead of proceeding to trial (*id.* at 10).

Brooks concedes he did not present either of these IATC claims on direct appeal or in his Rule 3.850 motion (ECF No. 14 at 9–11). He contends his failure to exhaust should be excused by his pro se status in the Rule 3.850 proceeding, pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012) (*id.* at 10–11).

The State asserts an exhaustion defense and contends Brooks' failure to present Ground Three or Ground Four to the state courts renders the claims

procedurally barred from federal review (ECF No. 18 at 28–31).  The State contends Brooks' procedural default may not be excused under *Martinez*, because *Martinez* applies only to post-conviction claims that were raised in state courts but not considered because of a state procedural bar (*id.* at 28, 31).  The State also contends Grounds Three and Four lack merit, so Brooks is not entitled to habeas relief notwithstanding the failure to exhaust (*id.* at 30–31).

In *Martinez*, the Supreme Court held that "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a procedural default of an ineffective-assistance claim . . ." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]." *Martinez*, 566 U.S. at 14.  In such instances, the habeas petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

As an initial matter, neither the Supreme Court nor the Eleventh Circuit has interpreted *Martinez* as narrowly as the State does.  *Martinez* applies to a petitioner's "procedural default" of a claim.  566 U.S. at 14.  Federal courts treat unexhausted

claims as procedurally defaulted in two circumstances:  (1) where the claim was presented in state court and rejected on the independent and adequate state ground of procedural bar or default, *see Coleman v. Thompson*, 501 U.S. 722, 734–35 and n.1 (1991); and (2) where the claim was never presented in state court, and a return to state court would be futile because the claim would clearly be barred by state procedural rules, *see Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n. 56 (11th Cir. 2014) (citation omitted).  Brooks' claims fall under the second circumstance, so he may establish cause under *Martinez* only if he satisfies its requirements.

The state post-conviction court did not appoint counsel to represent Brooks in the Rule 3.850 proceeding.  So Brooks has satisfied the first requirement under *Martinez*.

However, Brooks has not satisfied the second requirement, because he has not shown that either of his IATC claims is substantial, i.e., that it has "some merit." The error of which Brooks accuses defense counsel in both claims is counsel's failure to advise him that the legal presumption regarding possession of stolen property relieved the State of its burden of proving beyond a reasonable doubt that he committed the burglary.

Brooks mischaracterizes the presumption at issue.  The legal presumption is included in Florida's standard jury instructions on burglary, and those instructions were provided to the jury at Brooks' trial:

> Proof of possession by an accused of property recently stolen by means of a burglary, unless satisfactorily explained, may justify a conviction of burglary **if the circumstances of the burglary and the possession of the stolen property convinced you beyond a reasonable doubt that the defendant committed the burglary**.

(*see* Ex. 6 at 216) (emphasis added); *see also* Fla. Standard Jury Instructions in Criminal Cases, Part Two:  Instructions on Crimes, Part 13, § 13.1.

Contrary to Brooks' assertion, the legal presumption **did not relieve the State of its burden to prove beyond a reasonable doubt that he committed the burglary**.  Therefore, defense counsel's failure to advise Brooks that it did was not deficient.

Brooks procedurally defaulted Grounds Three and Four, and he has not shown he is entitled to federal review of either claim under *Martinez*.  Therefore, Brooks is not entitled to federal habeas relief on Ground Three or Ground Four.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate

is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of July 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**




**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**